# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

|  |  |
|---|---|
| GERLINE ASHFORD, DAKOTA ASHFORD personal representative of the ESTATE OF GARY ASHFORD, deceased,<br>            *Plaintiff,*<br><br>v.<br><br>DEKALB COUNTY, TENNESSEE; SHERIFF PATRICK RAY, in his individual capacity; JOHN DOE 1 and JOHN DOE 2 in their individual capacities,<br>            *Defendants,* | No.<br><br>JURY DEMANDED |

## COMPLAINT

COMES NOW the Plaintiff, Gerline Ashford, individually and as the Personal Representative of the Estate of Gary Ashford, by and through undersigned counsel, and for her Complaint against the Defendants states as follows:

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), which provides for the redress of deprivations, under color of state law, of rights secured by the Constitution of the United States.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes a civil action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of

the United States, and under 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under § 1983.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more Defendants reside in this district, all Defendants are residents of the State of Tennessee, and a substantial part of the events and omissions giving rise to these claims occurred within this judicial district.

**PARTIES**

5. Plaintiff Gerline Ashford is a citizen and resident of DeKalb County, Tennessee, and is the mother of the decedent, Gary Ashford.

6. Dakota Shaine Ashford is nephew of Gary Ashford and the appointed personal representative of the Estate of Gary Ray Ashford. (See Exhibit 1 – Chancery Court Order)

7. The decedent, Gary Ashford, was at all relevant times a forty-eight-year-old citizen and resident of DeKalb County, Tennessee.

8. Defendant DeKalb County, Tennessee, is a political subdivision duly organized under the laws of the State of Tennessee. It is responsible for the policies, customs, and practices of the DeKalb County Sheriff's Department and for the training and supervision of its deputies.

9. Defendant Sheriff Patrick Ray is the Sheriff of DeKalb County and, at all relevant times, was the final policymaker for the DeKalb County Sheriff's Department. He is sued in his individual capacity. He is also alleged to have been the final policymaker for the DeKalb County Sheriff's Department for purposes of the municipal-liability claims asserted herein.

10. Defendants John Doe 1 and John Doe 2 are deputies of the DeKalb County Sheriff's Department who, at all relevant times, acted under color of state law and within the course and

2

scope of their employment. Their true identities are presently unknown to Plaintiff and will be substituted by amendment once ascertained. They are sued in their individual capacities.

## FACTUAL ALLEGATIONS

11. Gary Ashford resided at a home in DeKalb County, Tennessee, with his grandmother, Plaintiff Gerline Ashford, and his nephew.

12. Gerline Ashford is seventy-eight years old and suffers from significant medical conditions and physical limitations that restrict her mobility and range of motion.

13. The warrant the deputies sought to execute was a failure-to-appear warrant arising from a non-violent, traffic-related matter: driving without a license.

14. On the evening of October 4, 2025, Defendant John Doe 1 arrived at Mr. Ashford's residence to execute the failure-to-appear warrant.

15. Upon Defendant John Doe 1's arrival, Mr. Ashford told his grandmother that he was going to jail and that the deputy was there to arrest him. Mr. Ashford did not attempt to flee or hide.

16. According to the public account later given by Sheriff Patrick Ray, the first deputy knocked on the door, announced himself, spoke with Mr. Ashford through a closed window, and directed him to open the door, but Mr. Ashford did not open it.

17. By the Defendants' own account, the first deputy remained outside the residence for approximately thirty minutes before the second deputy arrived, during which time Mr. Ashford committed no act of violence, made no threat, and remained inside his home.

18. After a period of time, Defendant John Doe 2 arrived to assist in executing the warrant.

3

19. Mr. Ashford did not attempt to flee from law enforcement, did not threaten any deputy, and committed no act of violence in the deputies' presence.

20. However, the Dekalb County Sheriff's office portrayed Mr. Ashford as "aggressively shouting" at the deputies and while locking himself inside his bedroom.

21. Before Mr. Ashford could safely exit his residence to surrender, Defendants John Doe 1 and John Doe 2 escalated the encounter by forcibly breaking down the front door of the residence.

22. By the Dekalb County Sheriff's Office's own account, after forcing the front door open the deputies then forced open the interior door to Mr. Ashford's bedroom, escalating the confrontation further inside his home rather than withdrawing or attempting to de-escalate.

23. After forcing entry, the deputies repeatedly shouted commands at Mr. Ashford to "drop it."

24. Upon information and belief, Mr. Ashford may have had on his person a box cutter or similar utility tool that he customarily carried on a belt clip.

25. Upon information and belief, at no time, did Mr. Ashford raise, brandish, throw, or use any object as a weapon against the deputies, nor did he lunge or charge at them.

26. Defendant Ray claims that Mr. Ashford twice "violently charged" at the deputies with an "open bladed utility knife" extended in his hand, coming within five feet of them and placing both deputies in fear of imminent and serious bodily injury or death.

27. Upon information and belief, that account is false. Mr. Ashford did not charge, lunge at, or advance upon the deputies with a weapon.

28. Within moments of the forced entry, Defendants John Doe 1 and John Doe 2 fired multiple shots at Mr. Ashford, killing him on the porch of his own home.

4

29. Upon information and belief, the deputies fired multiple rounds at Mr. Ashford, and Mr. Ashford was struck by gunfire at least twice.

30. Upon information and belief, at least one round was fired after Mr. Ashford had already been struck by gunfire and had fallen to the ground.

31. Upon information and belief, Defendants John Doe 1 and John Doe 2 continued to discharge their firearms at Mr. Ashford after any threat that he may have been perceived to pose had been neutralized and after he no longer posed an immediate threat of serious physical harm to the deputies or to anyone else.

32. Upon information and belief, one or more rounds struck Mr. Ashford while he was incapacitated, and/or from angles or positions consistent with Mr. Ashford's having already fallen to the ground, including wounds to the back of his body.

33. Upon information and belief, the deputies failed to reassess whether Mr. Ashford continued to pose any threat before continuing to fire and before firing the rounds that ultimately killed him.

34. The number, sequence, and timing of the shots, the commands given, and Mr. Ashford's position and condition when each shot was fired are documented by the deputies' body-worn camera recordings, the physical and ballistic evidence, and the autopsy and medical-examiner findings, all of which are presently in the possession of the Defendants and/or the State of Tennessee and are not yet available to Plaintiff.

35. The Defendants have publicly acknowledged that both deputies wore body-worn cameras that captured audio and video of the entire encounter, but have stated that the footage will not be released until after the Tennessee Bureau of Investigation and the District Attorney close their investigation, and the footage has not been made available to Plaintiff.

5

36. After shooting Mr. Ashford, and while Mr. Ashford lay mortally wounded, Defendants John Doe 1 and John Doe 2 turned their attention to his grandmother, Plaintiff Gerline Ashford, a seventy-eight-year-old woman with significant physical limitations who was inside her own home. Although Sheriff Ray has publicly claimed that the deputies immediately radioed for an ambulance and began administering first aid to Mr. Ashford, the Defendants' public account makes no mention of the deputies' seizure and handcuffing of Mrs. Ashford.

37. Gerline Ashford was not suspected of any crime, was not named in any warrant, posed no threat whatsoever to the deputies or anyone else, made no threatening movement, and did not resist the deputies in any way.

38. Despite this, Defendants John Doe 1 and John Doe 2 forcibly seized and detained Mrs. Ashford, grabbed her, and threw her to the ground.

39. While she was on the ground, the deputies ordered Mrs. Ashford to place her arms behind her back.

40. Mrs. Ashford told the deputies that, because of her age and physical limitations, she was physically unable to place her arms behind her back.

41. Despite being told of her physical limitations, and despite Mrs. Ashford posing no threat and offering no resistance, the deputies forcibly wrenched her arms behind her back and handcuffed her, causing her physical injury, pain, and emotional distress.

42. Defendant Sheriff Patrick Ray was, at all relevant times, personally responsible for the policies, training, supervision, and discipline of the deputies of the DeKalb County Sheriff's Department, including Defendants John Doe 1 and John Doe 2.

6

43. Upon information and belief, before October 4, 2025, Sheriff Ray had actual knowledge, through prior incidents, citizen complaints, internal-affairs records, that deputies of the DeKalb County Sheriff's Department had repeatedly used excessive force and unsound tactics, including the unnecessary escalation of encounters with non-violent and non-threatening individuals.

44. Upon information and belief, despite that knowledge, Sheriff Ray failed to investigate, retrain, supervise, or discipline the deputies responsible, and failed to adopt or enforce policies that would have prevented the conduct, thereby abandoning the specific duties of his office in the face of actual knowledge of a breakdown in the proper functioning of his department.

45. After Defendants John Doe 1 and John Doe 2 shot and killed Mr. Ashford, Sheriff Ray reviewed the circumstances of the shooting, including the deputies' body-worn camera recordings, and thereafter publicly defended and endorsed the deputies' use of deadly force as justified. Upon information and belief, Sheriff Ray has declined to discipline either deputy and has instead approved and ratified their conduct as Sheriff and final policymaker of the DeKalb County Sheriff's Department.

**COUNT I**
**Fourth Amendment — Excessive (Deadly) Force**
**(42 U.S.C. § 1983 — against Defendants John Doe 1 and John Doe 2)**

46. At all relevant times, Defendants John Doe 1 and John Doe 2 acted under color of state law.

47. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees the right to be free from the use of excessive force, including the use of deadly force against a person who does not pose an immediate threat of serious physical harm.

7

48. Mr. Ashford had no significant criminal history and was a non-violent individual. The underlying offense for which the deputies sought to arrest him—a failure to appear on a non-violent traffic matter—was minor and did not justify the use of deadly force.

49. At the time the deputies used deadly force, Mr. Ashford did not pose an immediate threat of serious physical harm to the deputies or to others, was not actively resisting arrest, and was not attempting to evade arrest by flight.

50. Under the totality of the circumstances, the deputies' use of deadly force against Mr. Ashford was objectively unreasonable, unnecessary, and excessive.

51. In the alternative, and in any event, even if a deputy reasonably perceived an immediate threat at the outset of the encounter, the deputies' continued use of deadly force after Mr. Ashford had been struck, had fallen, and/or had been incapacitated and no longer posed any immediate threat was objectively unreasonable, gratuitous, and excessive as a matter of law.

52. At the time of the shooting, it was clearly established that the use of deadly force against a person who poses no immediate threat—and the continued use of force against a person who has been incapacitated or neutralized—violates the Fourth Amendment, such that every reasonable officer would have known that the conduct alleged here was unlawful.

53. As a direct and proximate result of the individual Defendants' conduct, Mr. Ashford suffered conscious physical and mental pain and suffering before his death and ultimately died, and his estate and statutory beneficiaries have suffered damages as set forth below.

**COUNT II**
**Fourth Amendment — Unreasonable Seizure and Excessive Force**
**(42 U.S.C. § 1983 — by Gerline Ashford, individually, against Defendants John Doe 1 and John Doe 2)**

8

54. At all relevant times, Defendants John Doe 1 and John Doe 2 acted under color of state law.

55. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees Gerline Ashford the right to be free from unreasonable seizures and from the use of excessive force.

56. Defendants John Doe 1 and John Doe 2 seized Gerline Ashford within the meaning of the Fourth Amendment when they grabbed her, threw her to the ground, restrained her, and handcuffed her, such that a reasonable person in her position would not have felt free to leave.

57. At all times during this encounter, Mrs. Ashford was a non-suspect bystander in her own home. She was not named in any warrant, was not suspected of any crime, posed no threat to the deputies or anyone else, made no threatening movement, did not resist, and had told the deputies that her physical limitations prevented her from complying with their commands.

58. Under the totality of the circumstances, the deputies' seizure of Mrs. Ashford and their use of force against her were objectively unreasonable and excessive, including but not limited to:

(a) forcibly detaining and seizing a seventy-eight-year-old, non-suspect bystander who posed no threat and was not resisting;

(b) grabbing her and throwing her to the ground; and

(c) wrenching her arms behind her back and handcuffing her after she stated that her physical limitations made her unable to comply.

59. At the time, it was clearly established that seizing a compliant, non-threatening, non-suspect bystander and using such force against her—including throwing her to the ground and

forcing her arms behind her back—violates the Fourth Amendment, such that every reasonable officer would have known the conduct was unlawful.

60. As a direct and proximate result of the individual Defendants' conduct, Plaintiff Gerline Ashford suffered physical injury, pain and suffering, and emotional distress, for which she seeks compensatory and punitive damages in her individual capacity.

**COUNT III**
**Municipal Liability — Failure to Train and Supervise**
**(42 U.S.C. § 1983 — against DeKalb County)**

61. DeKalb County failed to adequately train and supervise its deputies regarding:

    (a)  safe warrant-service tactics and decision-making inside private residences;

    (b)  de-escalation and crisis-response practices;

    (c)  the constitutional limits on the use of deadly force, including the prohibition on continued force after a person has been incapacitated; and

    (d)  the constitutional limits on detaining and using force against non-suspect occupants, including elderly and medically vulnerable individuals.

62. The training and supervision that DeKalb County provided to its deputies was inadequate to prepare them for the usual and recurring situations they would confront in the line of duty, including the execution of arrest warrants at private residences and encounters with non-compliant or allegedly armed individuals inside a home.

63. The need for more or different training and supervision in these areas was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that DeKalb County's failure to provide it amounted to deliberate indifference to the rights of persons with

10

whom its deputies would foreseeably come into contact, including Mr. Ashford and Gerline Ashford.

64. The risk that inadequately trained and supervised deputies would use excessive or deadly force in executing warrants was a known or obvious consequence of the County's failure to train and supervise, such that its deliberate indifference may be inferred even from a single such incident.

65. DeKalb County's failure to adequately train and supervise its deputies was the moving force behind, and actually and proximately caused, the constitutional violations alleged herein, directly resulting in Mr. Ashford's death and Gerline Ashford's injuries.

**COUNT IV**
**Supervisory Liability**
**(42 U.S.C. § 1983 — against Sheriff Patrick Ray, in his individual capacity)**

66. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

67. At all relevant times, Defendant Sheriff Patrick Ray acted under color of state law.

68. As the Sheriff of DeKalb County, Sheriff Ray had supervisory authority over, and was responsible for the hiring, training, supervision, direction, and discipline of, the deputies of the DeKalb County Sheriff's Department, including Defendants John Doe 1 and John Doe 2.

69. Sheriff Ray had actual knowledge, as set forth above, that his deputies were inadequately trained and supervised regarding safe warrant-service tactics inside private residences, de-escalation and crisis response, the constitutional limits on the use of deadly force, and the constitutional limits on the detention of and use of force against non-suspect occupants, and that these deficiencies created an obvious and substantial risk that deputies would violate the constitutional rights of persons such as Mr. Ashford and Gerline Ashford.

70. Despite that knowledge, Sheriff Ray was deliberately indifferent to the risk.

71. In the face of his actual knowledge of a breakdown in the proper functioning of his department, he abandoned the specific duties of his office by failing to investigate, retrain, or discipline deputies who had previously used excessive force and by failing to adopt and enforce adequate policies.

72. Through his conduct, Sheriff Ray at least implicitly authorized, approved, and knowingly acquiesced in the unconstitutional conduct alleged herein. His subsequent review and public approval of the deputies' use of deadly force, and his refusal to discipline them, further confirm that he approved and ratified that conduct.

73. There is a direct causal connection between Sheriff Ray's acts and omissions and the violations of Mr. Ashford's and Gerline Ashford's constitutional rights.

74. Sheriff Ray's authorization, approval, knowing acquiescence, and abandonment of his supervisory duties could reasonably be expected to give rise to, and were the moving force behind, the deputies' use of unreasonable and deadly force against Mr. Ashford and their unlawful seizure of and use of force against Gerline Ashford.

75. As a direct and proximate result of, and but for, Sheriff Ray's deliberate indifference and supervisory conduct, Mr. Ashford was shot and killed and Gerline Ashford was unlawfully seized and injured, and Plaintiff has suffered the damages set forth herein.

76. Sheriff Ray's conduct was reckless and callously indifferent to the federally protected rights of Mr. Ashford and Gerline Ashford, entitling Plaintiff to an award of punitive damages against him in his individual capacity.

## DAMAGES

77. As a direct and proximate result of the Defendants' violations of federally protected rights, the Estate of Gary Ashford and his statutory beneficiaries have suffered damages, including:

> (a) the conscious physical and mental pain and suffering experienced by Mr. Ashford before his death;
>
> (b) the pecuniary value of Mr. Ashford's life;
>
> (c) and the loss of Mr. Ashford's love, society, companionship, and consortium suffered by his statutory beneficiaries;

78. As a direct and proximate result of the Defendants' conduct, Plaintiff Gerline Ashford has individually suffered physical injuries, pain and suffering, emotional distress, and related medical expenses.

79. The individual Defendants' conduct was reckless and callously indifferent to the federally protected rights of Mr. Ashford and Gerline Ashford, entitling Plaintiff to an award of punitive damages against those Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

> a. Issue process and require each Defendant to respond within the time provided by the Federal Rules of Civil Procedure;
>
> b. Empanel a jury to try this case;
>
> c. Enter a declaratory judgment that the Defendants violated the constitutional rights of Mr. Ashford and Gerline Ashford;

13

d.  Award nominal damages;

e.  Award compensatory damages, including all survival and wrongful-death damages, in an amount to be determined at trial;

f.  Award punitive damages against the individual Defendants in an amount to be determined at trial;

g.  Award reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988; and

h.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Paul D Randolph III*
Wesley Ben Clark, #32611
Paul D. Randolph, #39667
BRAZIL CLARK, PLLC
760 E Argyle Avenue
Nashville, TN 37203
(615) 730-8619 | (615) 634-3651 (fax)
wesley@brazilclark.com
paul@brazilclark.com
*Counsel for Plaintiff*